# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––

**No. ACM 40170**

––––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Nigel G. BERRY**
Airman Basic (E-4), U.S. Air Force, *Appellant*

––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 15 December 2022

––––––––––––––––––

*Military Judge:* Brett A. Landry.

*Sentence:* Sentence adjudged 25 May 2021 by GCM convened at Fairchild Air Force Base, Washington. Sentence entered by military judge on 16 July 2021: Bad-conduct discharge, confinement for 240 days, reduction to E-1, forfeiture of all pay and allowances, and a reprimand.

*For Appellant:* Major Eshawn R. Rawlley.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RAMÍREZ, and CADOTTE, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––––––

RAMÍREZ, Judge:

A military judge found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of three specifications of assault consummated by battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928,[1,2] and one specification of wrongful use of a controlled substance in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

Appellant's plea agreement provided, among other things, that a charge and specification alleging sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920, would be withdrawn and dismissed with prejudice upon the military judge's acceptance of the guilty pleas to the other specifications; that the specifications to which Appellant pleaded guilty would have a minimum of 120 days and maximum of 365 days of confinement; that confinement periods for the specifications could run consecutively or concurrently, but could not exceed a total of 365 days; and that Appellant could not be sentenced to a dishonorable discharge. The military judge sentenced Appellant to a bad-conduct discharge, 240 days of confinement, reduction to the grade of E-1, forfeiture of all pay and allowances, and a reprimand. The convening authority took no action on the findings or the sentence.

Appellant raises one issue on appeal: whether a victim unsworn statement can take the form of a prerecorded video. We find Appellant waived this issue and, finding no material prejudice to a substantial right of Appellant, affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty on 6 June 2017. He met DDS, the victim in this case and a fellow Airman, while they were stationed together. They married on 17 February 2019. The night after their wedding, Appellant wrapped his hands around DDS's throat and unlawfully strangled[3] her with both of his

---

[1] Based on the wording of the specifications, the military judge noted on the record that during the charged timeframe, the UCMJ contained a specification for aggravated assault resulting from strangulation, but that the specifications charged assaults consummated by battery upon a spouse. Both trial counsel and trial defense counsel agreed that the specifications referenced assaults consummated by battery upon a spouse in violation of Article 128, UCMJ.

[2] All references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Although the charge sheet and the stipulation of fact use the word "choke," the military judge stated on the record that "choke" refers to a condition where "someone has to have an obstruction in his or her throat." The military judge gave the example, "I

hands; during his providence inquiry, Appellant agreed that this was done with "force and violence." The following morning, Appellant's wife confronted him and told him she wanted to rip up their marriage certificate. Appellant apologized and promised his wife that it would never happen again.

Two months later, Appellant was in DDS's dorm room[4] and they began to argue. At one point, Appellant grabbed her throat with both of his hands, with force and violence, and threw her onto the bed. In the process of doing so, Appellant applied pressure to her throat sufficient to temporarily strangle her. Appellant also slapped her face with his open hand.

Appellant was also charged with, and pleaded guilty to, unlawful drug use. Specifically, Appellant admitted to wrongfully using lysergic acid diethylamide (LSD) in November 2020. Appellant admitted that he bought the LSD from someone he knew, then took it to his dorm room at Fairchild Air Force Base and used it by himself.

During the presentencing portion of Appellant's court-martial, the military judge stated, "Any crime victim who is present at this presentencing proceeding has the right to be reasonably heard, including the right to make a sworn statement, unsworn statement, or both." He also explained that a "crime victim may exercise this right following the [G]overnment's opportunity to present evidence on sentencing." Finally, he stated that he understood that the victim would be making an unsworn statement in video form.

The military judge proposed a recess so that counsel for both parties could review the video. Trial defense counsel stated, "I think the video is about seven or eight minutes, so I think 20 minutes will give us enough time to watch it, come up with objections, and be ready to go back on the record." The military judge agreed and counsel reviewed the video during the recess.

When the parties were back on the record, special victims' counsel offered a one-page unsworn written victim impact statement written by DDS as Court Exhibit A. It was accepted for the military judge's consideration with no objection. It discusses each assault, how DDS felt after the assaults, and how Appellant behaved before, during, and after the assaults. DDS's unsworn video victim impact statement was also offered by special victims' counsel; the video was 7 minutes and 24 seconds long. Like the written unsworn statement, the

---

took a bite of food and choked on it." Appellant responded that be believed "choke" had two meanings, explaining that one of them was "squeezing along the sides of the throat" and "applying pressure to both sides." Appellant agreed with the military judge that Appellant's understanding of the word "choke" was consistent with the charge sheet and the stipulation of fact. We use the word "choke" to be consistent with how the word was used in this case.

[4] Although married, Appellant and his wife were not stationed together.

video statement discusses each assault, how DDS felt after the assaults, and how Appellant behaved before, during, and after the assaults. As discussed below, the video unsworn also contained a very brief reference to additional factual matters, but otherwise contained essentially the same substantive material as DDS's written statement.

When the military judge asked whether there were any objections, trial defense counsel stated:

> Sir, one minor objection. Between time hack 3:40 and 3:50 on the copy that I was provided, [DDS] appears to provide new factual matters about being choked multiple times during Specification 2 of Charge II. I'd just ask that within your discretion under [Rule for Courts-Martial] 1001(c)(5)(C) that you not consider those matters.

Special victims' counsel asked the military judge to overrule trial defense counsel's objection and consider the entirety of the video. After considering the objection, the response, and reviewing the video again, the military judge sustained trial defense counsel's objection. The military judge then asked trial defense counsel if there were any other objections to the video, to which the response was "No, sir." The military judge then accepted the video, Court Exhibit B, for consideration, but noted that he granted trial defense counsel's objection and would not consider that portion of the video.

Finally, the military judge stated on the record that he relied on an unpublished opinion from this court, *United States v. Edwards*, No. ACM 39696, 2021 CCA LEXIS 106 (A.F. Ct. Crim. App. 10 Mar. 2021) (unpub. op.), *rev'd*, 82 M.J. 239 (C.A.A.F. 2022), for the proposition that "video format was an appropriate format for a victim, a crime victim to present an[ ] unsworn statement and that that could be considered by a court."[5]

## II. DISCUSSION

### A. Law

"Congress has granted the victim of an offense under the UCMJ the right to be 'reasonably heard' during any sentencing hearing related to that offense." *United States v. Edwards*, 82 M.J. 239, 245 (C.A.AF. 2022) (citing Article 6b(a)(4)(B), UCMJ). However, if a victim makes an unsworn victim statement, the statement is not evidence. *Id.* at 243. The victim's right to be heard "is separate and distinct from the [G]overnment's right to offer victim impact

---

[5] We note that the United States Court of the Appeals for the Armed Forces had not yet issued its opinion at the time the military judge considered the Air Force Court of Criminal Appeals' unpublished *Edwards* opinion.

statements in aggravation, under R.C.M. 1001(b)(4).ˮ *Id.* at 245 (emphasis and citation omitted). If a victim elects to make a statement during the presentencing phase, the victim may confer with trial counsel in preparation for the unsworn statement, "but trial counsel may not misappropriate the victim's right to be heard" by creating a video on the victim's family's behalf. *Id.* at 246

We apply an "abuse of discretion" standard when "determining whether a military judge erroneously admitted an unsworn victim statement." *Id.* at 243. However, "[w]here an appellant has not preserved an objection to evidence by making a timely objection, that error will be forfeited in the absence of plain error." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (internal quotation marks and citations omitted). Under the plain error standard, the appellant bears the "burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Id.* (citation omitted).

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (internal quotation marks and citation omitted). Although we review forfeited issues for plain error, we generally do not review waived issues "because a valid waiver leaves no error for us to correct on appeal." *Id.* (internal quotation marks and citation omitted).

Notwithstanding this substantive rule of law, our superior court has instructed that we "are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted).

**B. Analysis**

Appellant argues that neither this court nor our superior court has answered the question of whether the Rules for Courts-Martial permit the delivery of a victim unsworn statement via prerecorded video.[6] Appellant invites this court to "pierce waiver and reach the merits." Appellant asks us to pierce waiver because of multiple unknown issues with respect to the video, including: that it is unknown when the video was filmed or who produced it; that the video was edited and it is unknown how many takes there were; and that it is unknown if the victim was just reading Court Exhibit A, which is the written victim impact statement, or if Court Exhibit A was prepared to memorialize

---

[6] We agree with Appellant that in *Edwards*, the United States Court of Appeals for the Armed Forces did not decide whether R.C.M. 1001(c) "would ever permit a victim to offer an unsworn statement via prerecorded video." *Edwards*, 82 M.J. at 243. Additionally, this court has decided four post-*Edwards* cases involving victim unsworn statements that do not answer the question.

the video. As discussed below, we decline Appellant's invitation to pierce waiver.

The procedural facts of this case are similar to a recent opinion where this court found waiver. *United States v. Andersen*, 82 M.J. 543, 547 (A.F. Ct. Crim. App. 2022). In *Andersen*, like here, the issue concerned a prerecorded video victim impact statement. *Id.* at 546. By the time the presentencing phase occurred in *Andersen*, "trial defense counsel had seen the video and stated they had no objection to it even after taking a short break to consider whether to object." *Id.* at 547. In *Andersen*, the court found that "trial defense counsel did not merely fail to object at trial, they made the deliberate choice not to do so and thereby affirmatively waived the matter by stating they had no objection." *Id.*

Here, trial defense counsel asked for a 20-minute recess to review a seven-minute video and contemplate objections. When the parties were back on the record, trial defense counsel objected to a portion of Court Exhibit B and the military judge sustained the objection. Then trial defense counsel stated there was no objection to the military judge's consideration of the rest of the video. Thus, trial defense counsel did not merely forfeit his right to object. Instead, he specifically objected to a portion, then made the deliberate choice not to object to the remainder of the exhibit and thereby affirmatively waived the matter.

Additionally, having carefully considered Appellant's claimed error and our mandate to assess the entire record to determine whether to leave Appellant's waiver intact, we have determined we will leave his waiver intact. The issues that Appellant raises for the first time on appeal—that it is unknown when the video was filmed or who produced it; that it was edited and it is unknown how many takes there were; and that it is unknown if the victim was just reading the written victim impact statement or if Court Exhibit A was prepared to memorialize the video—are reasons we require the challenging party to object. Appellant did not challenge the propriety of Court Exhibit A at trial or on appeal. Under these circumstances, we find it is not appropriate to pierce waiver.

Even if we were to conclude Appellant had forfeited, rather than waived, this issue, we would conclude any error was harmless under the specific facts of this case. While we recognize that a video could have more emotion than a document, as explained above, the written victim impact statement marked as Court Exhibit A contained essentially the same information as the video. Additionally, the video did not include any music, photographs, or other production elements calculated to evoke an emotional response, and which our superior court found to be prejudicial in *Edwards*. *See* 82 M.J. at 248. The facts here also cut against the prejudice our superior court found in *Edwards* by the way the Government used the video during sentencing. Here, trial counsel did not

discuss the video at all in the sentencing argument. Therefore, even if we were to find the military judge committed plain error by considering the recorded video statement, Court Exhibit B, we would find any error was harmless.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court